**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 23, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2150-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF683

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

TERRAL DONTAE WALLACE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: MARC A. HAMMER, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

¶1   GILL, J.   Terral Wallace appeals from a judgment, entered upon his guilty plea, convicting him of three counts, including one count of homicide by intoxicated use of a vehicle, and from an order denying his postconviction motion

for plea withdrawal without a *Bangert*[1] hearing. The parties agree that the circuit court correctly determined that Wallace made a prima facie showing that the court's plea colloquy with Wallace was defective because the court failed to inform him that he faced a five-year presumptive minimum term of initial confinement on the homicide by intoxicated use of a vehicle count. *See State v. Mohr*, 201 Wis. 2d 693, 700-01, 549 N.W.2d 497 (Ct. App. 1996); WIS. STAT. § 940.09(1c)(a) (2023-24).[2] However, the parties dispute whether Wallace is entitled to a *Bangert* hearing.

¶2 Ultimately, for the reasons expressed below, we conclude that the circuit court properly denied Wallace's postconviction motion without a *Bangert* hearing. Binding precedent dictates that no evidentiary hearing is required on a defendant's *Bangert* motion where, despite the defendant making a prima facie showing that the court's plea colloquy was defective: (1) the record demonstrates that the defendant knew the "potential punishment" and was given the sentence the circuit court described, *see State v. Finley*, 2016 WI 63, ¶81, 370 Wis. 2d 402, 882 N.W.2d 761; and (2) the defendant "was not affected by" an "insubstantial defect[]" in the plea colloquy, *see State v. Johnson*, 2012 WI App 21, ¶12, 339 Wis. 2d 421, 811 N.W.2d 441 (alteration in original; citation omitted). The record makes clear that Wallace did not expect to receive—or ask for—a sentence below the presumptive minimum, that Wallace knew of the presumptive minimum, that the parties jointly recommended a period of initial confinement on the count in question that was double the presumptive minimum, that the circuit court adopted

---

[1] *See State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

and imposed that sentence, and that the presumptive minimum played no role in the court's sentencing decision. We affirm.

## BACKGROUND

¶3 The State charged Wallace with one count of homicide by intoxicated use of a vehicle (Count 1), pursuant to WIS. STAT. § 940.09(1)(a), and three counts of injury by intoxicated use of a vehicle, all as a repeater. According to the complaint, an intoxicated Wallace lost control of his vehicle on Interstate 41. The resulting crash killed one of the vehicle's passengers and wounded three other passengers.

¶4 At Wallace's initial appearance, Wallace's defense counsel explained that he had reviewed the complaint with Wallace and stated that he believed Wallace understood "the charges and the maximum potential penalties." The criminal complaint correctly stated that if convicted on Count 1, Wallace faced a five-year presumptive minimum term of initial confinement. *See* WIS. STAT. § 940.09(1c)(a).[3]

¶5 Prior to the arraignment, the State filed an information and an amended information. The amended information added one count of homicide by use of a vehicle with a prohibited alcohol concentration and three counts of injury

---

[3] WISCONSIN STAT. § 940.09(1c)(a) states that a person who violates § 940.09(1) is guilty of a Class D felony and that upon conviction,

> the court shall impose a bifurcated sentence … and the term of confinement in prison portion of the bifurcated sentence shall be at least 5 years except that a court may impose a term of confinement that is less than 5 years if the court finds a compelling reason and places its reason on the record.

by use of a vehicle with a prohibited alcohol concentration, all as a repeater. Both the information and the amended information stated there was a five-year presumptive minimum term of initial confinement for the homicide by intoxicated use of a vehicle charge.

¶6 Ultimately, the parties entered a plea agreement wherein Wallace would plead no contest to Count 1 and two counts of injury by intoxicated use of a vehicle without the repeater enhancers. The State, in turn, agreed to recommend that the circuit court dismiss and read in the remaining five counts. In preparation for the plea hearing, Wallace reviewed with his defense counsel and signed a standard plea questionnaire and waiver of rights form. The plea questionnaire form stated that the circuit court was not bound by any plea agreement or recommendation and that it could impose the maximum potential punishment for each count. For Count 1, defense counsel noted on the plea questionnaire form that Wallace faced 25 years of imprisonment. On the remaining counts, defense counsel explained that Wallace faced an additional 25 years of imprisonment. The plea questionnaire form included the standard statement, "I understand that the presumptive minimum penalty, if any, I face upon conviction is," but the lines underneath that statement were left blank, and defense counsel did not otherwise include a reference to the five-year presumptive minimum term of initial confinement on the form.

¶7 At the plea hearing, the circuit court accepted Wallace's pleas after conducting a colloquy with reference to the plea questionnaire form and dismissed and read in the remaining counts. While the court did not inform Wallace of the five-year presumptive minimum term of initial confinement, it did reference the maximum potential punishment for that count, including 25 years of imprisonment. In addition, the court explained that Wallace faced an additional

4

25 years of imprisonment on the remaining counts. The court then ordered a presentence investigation report (PSI).[4]

¶8 The PSI did not include a reference to the five-year presumptive minimum term of initial confinement for Count 1, but, like the plea questionnaire and the circuit court's plea colloquy, it did include the maximum potential sentence for that count. The PSI author reported that "Wallace stated he is hoping for eight years in prison and as much time the Judge feels is appropriate on extended supervision." On Count 1, the PSI writer recommended that Wallace receive a sentence of 10 to 15 years of initial confinement and 4 to 5 years of extended supervision. The PSI author recommended sentences of three to four years of initial confinement and three to four years of extended supervision on the two remaining charges and did not make a specific recommendation as to whether the sentences should be concurrent or consecutive to one another.

¶9 At sentencing, both parties jointly recommended a total of 12 years of initial confinement and 10 years of extended supervision on all three counts, which included 10 years of initial confinement and 5 years of extended supervision on Count 1. The circuit court largely rejected the joint recommendation and instead imposed a total of 16 years of initial confinement and 12 years of extended supervision, which included 10 years of initial confinement and 6 years of extended supervision on Count 1. In issuing its sentence, the court emphasized the seriousness of the crimes and referenced the maximum 25 years of imprisonment for Count 1 set by the legislature. The court did not, however,

---

[4] At the time the plea was entered, no agreement was placed on the record with respect to a sentencing recommendation.

address or reference the presumptive five-year minimum term of initial confinement for Count 1.

¶10  Wallace filed a motion for postconviction relief[5] seeking to withdraw his no-contest plea on Count 1. Wallace argued that his plea was not knowing, intelligent, and voluntary because the circuit court failed to inform him of the five-year presumptive minimum term of initial confinement for Count 1. *See Mohr*, 201 Wis. 2d at 700-01. Wallace alleged that he did not know or understand that his plea to Count 1 exposed him to the presumptive minimum penalty.

¶11  In an oral ruling, the circuit court denied Wallace's plea withdrawal motion without holding an evidentiary hearing. The court determined that Wallace had made a prima facie showing on the first prong of the *Bangert* test to obtain an evidentiary hearing on his plea withdrawal claim because the court did not inform Wallace of the five-year presumptive minimum term of initial confinement for Count 1 during the plea colloquy.

¶12  However, on the second prong of the *Bangert* test, the circuit court concluded that Wallace had failed to meet his burden to obtain an evidentiary hearing. Citing the parties' joint sentencing recommendation on Count 1 that exceeded the five-year presumptive minimum, the court stated that the record was "very clear that the idea of the Court exploring [the] mandatory minimum was not realistic, was not something that was within the realm of reasonable possibilities or outcomes.… I don't think this is a case in which even if the Defendant was

---

[5] Wallace's appellate counsel initially filed a no-merit appeal. However, this court later granted counsel's motion to voluntarily dismiss that appeal to pursue postconviction relief.

unaware of the statutory minimums, it's prejudicial." The court distinguished *Mohr*, stating that the defendant in that case "really thought she was going to be able to get less than the" presumptive minimum, whereas here, "the possibility or probability of [Wallace] serving the mandatory minimum never arose to the surface." The court further explained that Wallace was not entitled to an evidentiary hearing on his claim because it was illogical to think that Wallace's lack of knowledge surrounding the five-year presumptive minimum "somehow … affected his decision to ask for twice" that amount in the joint recommendation. The court thereafter entered a written order denying Wallace's postconviction motion without an evidentiary hearing.

¶13 Wallace now appeals.

## DISCUSSION

¶14 Whether a circuit court properly denied a defendant's postconviction motion without an evidentiary hearing presents a mixed standard of appellate review. *State v. Ruffin*, 2022 WI 34, ¶26, 401 Wis. 2d 619, 974 N.W.2d 432. We independently determine whether a defendant's postconviction motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief and whether the record conclusively demonstrates that the defendant is not entitled to relief. *Id.*, ¶27. "If the motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.*, ¶28.

¶15 "When a defendant moves to withdraw [a] plea after sentencing, the defendant carries the heavy burden of establishing, by clear and convincing evidence, that the [circuit] court should permit the defendant to withdraw his plea

to correct a manifest injustice." *State v. Sulla*, 2016 WI 46, ¶24, 369 Wis. 2d 225, 880 N.W.2d 659 (citation modified). "One way for a defendant to meet this burden is to show that he did not knowingly, intelligently, and voluntarily enter the plea." *Id.* (citation omitted).

¶16    "Wisconsin imposes certain statutory and common law duties on circuit courts to ensure that a defendant's plea is given knowingly, intelligently, and voluntarily." *State v. Pegeese*, 2019 WI 60, ¶21, 387 Wis. 2d 119, 928 N.W.2d 590. Pertinent here, a circuit court, at the plea hearing and on the record, must establish the defendant's understanding of the range of punishments to which the defendant is subjecting himself or herself by entering a plea. *State v. Taylor*, 2013 WI 34, ¶31, 347 Wis. 2d 30, 829 N.W.2d 482; *see also* WIS. STAT. § 971.08(1)(a). This duty includes an assessment of a defendant's awareness of an applicable presumptive minimum sentence. *Mohr*, 201 Wis. 2d at 700-01. The duties established in § 971.08, in *Bangert*, and in subsequent cases are "designed to ensure that a defendant's plea is knowing, intelligent, and voluntary." *State v. Brown*, 2006 WI 100, ¶23, 293 Wis. 2d 594, 716 N.W.2d 906. "If [a] court fails to fulfill one of the duties … the defendant may move to withdraw his plea." *Taylor*, 347 Wis. 2d 30, ¶32.

¶17    A defendant is entitled to an evidentiary hearing under *Bangert* if he or she: (1) makes a prima facie showing of a violation of WIS. STAT. § 971.08 or another court-mandated duty; and (2) alleges that he or she did not, in fact, know or understand the information that should have been provided during the plea colloquy. *Taylor*, 347 Wis. 2d 30, ¶32.

¶18    However, "in some cases, 'small deviations' from the *Bangert* line of cases do not amount to a *Bangert* violation." *Taylor*, 347 Wis. 2d 30, ¶33

(citation omitted). The ***Bangert*** requirements exist as a framework, and our state supreme court has refused to "embrace a formalistic application of the ***Bangert*** requirements that would result in the abjuring of a defendant's representations in open court for *insubstantial defects*." ***State v. Cross***, 2010 WI 70, ¶32, 326 Wis. 2d 492, 786 N.W.2d 64 (emphasis added).

¶19 The State concedes that the circuit court did not discuss the five-year presumptive minimum term of initial confinement with Wallace at the plea hearing, and it does not expressly contend that Wallace failed to sufficiently allege that he did not, in fact, know or understand the information that should have been provided during the plea colloquy. Instead, the State argues that Wallace is not entitled to a ***Bangert*** hearing because "any failure to discuss the minimum was insubstantial"—"given that Wallace asked for and received double the presumptive minimum period of initial confinement" on Count 1—and "there is evidence in the record to suggest that Wallace was aware of the range of penalties on the table."

¶20 To support this argument, the State posits that "[t]wo important principles can be derived from" our state supreme court's decisions in ***Cross*** and ***Taylor***. First, argues the State, a circuit court's "failure to provide accurate information about the potential penalties during the plea colloquy is not always a per se ***Bangert*** violation, particularly when the defect has no effect on the sentencing outcome." Second, according to the State, a postconviction circuit court or appellate court "can look to the record outside of the plea hearing to determine whether a defect was insubstantial or not." The State also argues that this court's decision in ***Johnson*** "illustrates why ***Mohr*** does not compel" a conclusion that Wallace is entitled to a ***Bangert*** hearing.

9

¶21    Wallace disagrees with the State's "argumentative gambits," asserting that the State overstates the *Cross* and *Taylor* decisions and that it is "unable to point to any settled precedent holding that *this* defect is within" the "limited category" of insubstantial defects addressed in those cases. He also argues that our state supreme court's decision in *Finley* cautions that "the rule of an 'insubstantial defect' should not be casually invoked to excuse obvious plea colloquy defects." Wallace contends that *Mohr* is both directly on point to the facts of this case and binding on this court.

¶22    In *Cross*, the defendant pled guilty to one charge that carried a maximum imprisonment term of 30 years, consisting of 20 years of initial confinement and 10 years of extended supervision. *Cross*, 326 Wis. 2d 492, ¶1. In return, the State agreed to recommend "a sentence of 24 months." *Id.*, ¶7. At the plea hearing, both defense counsel and the circuit court erroneously stated that the defendant faced a maximum sentence of 40 years' imprisonment, including 25 years of initial confinement. *Id.*, ¶8. Ultimately, the circuit court imposed what it perceived as the maximum possible sentence of 25 years of initial confinement. *Id.*, ¶10. The defendant filed a postconviction motion seeking to withdraw his plea, arguing that his plea was not knowingly and intelligently entered because he was "incorrectly advised of the penalties prior to his guilty plea." *Id.*, ¶11. The circuit court denied the defendant's postconviction motion, although the court did vacate the sentence and order resentencing. *Id.*, ¶12.

¶23    Our state supreme court affirmed, concluding that "a defendant who has been told a maximum punishment higher, but not substantially higher, than that authorized by law, has not necessarily made a prima facie case that the requirements of [WIS. STAT.] § 971.08 and our case law have been violated." *Id.*, ¶30. Given the facts presented, the court held that the circuit court's misstatement

of the maximum penalty during the plea hearing amounted to an "insubstantial defect[]" because "a defendant can be said to understand the range of punishments as required by § 971.08 and ***Bangert*** when the maximum sentence communicated to the defendant is higher, but not substantially higher, than the actual allowable sentence." ***Cross***, 326 Wis. 2d 492, ¶¶32, 38.

¶24 According to our state supreme court, this conclusion "accords with common sense; not all small deviations from the requirements in our ***Bangert*** line of cases equate to a ***Bangert*** violation and require a formal evidentiary hearing." ***Cross***, 326 Wis. 2d 492, ¶38. The court explained that "requiring an evidentiary hearing for every small deviation from the circuit court's duties during a plea colloquy is simply not necessary for the protection of a defendant's constitutional rights," emphasizing that the "***Bangert*** requirements exist as a framework to ensure that a defendant knowingly, voluntarily, and intelligently enters his plea." ***Cross***, 326 Wis. 2d 492, ¶32.

¶25 In ***Taylor***, decided after ***Cross***, the defendant entered into a plea agreement whereby he agreed to plead no contest to one charge, as a repeater, that carried a maximum imprisonment term of eight years. ***Taylor***, 347 Wis. 2d 30, ¶¶11, 15. In return, the State agreed to recommend three years of probation. ***Id.***, ¶15. At the defendant's plea hearing, the circuit court incorrectly stated that it could impose a maximum sentence of six years' imprisonment. ***Id.***, ¶16. The court "did not expressly inform [the defendant] that because of the repeater allegation, the potential maximum term of imprisonment was eight years." ***Id.*** The court ultimately sentenced the defendant to a six-year term of imprisonment. ***Id.***, ¶17. The defendant filed a postconviction motion seeking to withdraw his plea, arguing that the plea colloquy was deficient "because it did not inform him of the maximum penalty" and "he did not know the correct maximum penalty."

*Id.*, ¶18. The circuit court denied the motion without a ***Bangert*** hearing. ***Taylor***, 347 Wis. 2d 30, ¶20.

¶26 On appeal, our state supreme court held that, like the plea defect in ***Cross***, the circuit court's failure to verbally discuss the additional two-year imprisonment term at the plea hearing was an "insubstantial defect." ***Taylor***, 347 Wis. 2d 30, ¶34. In other words, "the fact that the circuit court did not verbally discuss the additional two-year term of imprisonment at the plea hearing, while not ideal," did not "automatically trigger" a ***Bangert*** hearing. ***Taylor***, 347 Wis. 2d 30, ¶44. Rather, the court held that the "record ma[de] clear[6] that the defendant knew the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received." *Id.*, ¶8. Therefore, "the defendant's plea was entered knowingly, intelligently, and voluntarily." *Id.*

¶27 Later, in ***Finley***, the supreme court reiterated that, despite the holdings in ***Cross*** and ***Taylor***,

> ***Bangert*** and ***Brown*** stand for the proposition that when a plea colloquy is deficient and the defendant alleges that he [or she] did not know or understand the information that should have been provided in the plea colloquy, the defendant is entitled to an evidentiary hearing at which the State has an opportunity to prove by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily entered his plea.

---

[6] The ***Taylor*** court determined that the record conclusively demonstrated that the defendant was aware of the correct potential imprisonment he faced, as evidenced by the transcripts from his bail and preliminary hearings, the complaint, the information, and a plea questionnaire and waiver of rights form. ***State v. Taylor***, 2013 WI 34, ¶¶35-39, 347 Wis. 2d 30, 829 N.W.2d 482.

*Finley*, 370 Wis. 2d 402, ¶92.  The court distinguished *Cross* and *Taylor* from *Bangert* and *Brown*, stating:

> *Cross* and *Taylor* demonstrate that a circuit court's failure to correctly advise a defendant in the plea colloquy of the potential punishment he [or she] faces does not automatically permit a defendant to withdraw his or her plea.  *In these cases, the defendants knew the potential punishment*[7] *and were given the sentence the circuit court described.*
>
> ….
>
> As a result, in both *Cross* and *Taylor*, no evidentiary hearing was needed.

*Finley*, 370 Wis. 2d 402, ¶¶81, 84 (emphasis added).

¶28      In *Johnson*, this court, applying *Cross*, held that a defendant was not entitled to an evidentiary hearing on his plea withdrawal claim despite alleging that he did not know that the circuit court was not bound by a plea agreement.  *Johnson*, 339 Wis. 2d 421, ¶¶10, 13.  More specifically, we held that the defendant had failed to demonstrate that plea withdrawal was necessary to correct a manifest injustice, despite the circuit court failing to inform the defendant that it was not bound by a plea agreement[8]—and despite the defendant allegedly not knowing this fact—because the circuit court adopted the parties' recommendation

---

[7]  The *Finley* court stated that while "potential punishment" was not a statutorily defined term, "[i]n analyzing whether a defendant was correctly advised of the potential punishment, our cases have looked to the maximum statutory penalty, that is, the maximum sentence provided for by statute."  *State v. Finley*, 2016 WI 63, ¶4, 370 Wis. 2d 402, 882 N.W.2d 761.  The court further explained that "courts do not usually advise a defendant of the minimum statutory penalty"; however, "courts do … generally advise a defendant of a presumptive or mandatory minimum sentence."  *Id.*, ¶96 attach. A.

[8]  When accepting a guilty plea, a circuit court is required to inform the defendant that it is not bound by a plea agreement.  *State v. Hampton*, 2004 WI 107, ¶32, 274 Wis. 2d 379, 683 N.W.2d 14.

that it dismiss and read in the remaining count. *Id.*, ¶12. In reaching this conclusion, we did not consider whether the record made clear that the defendant actually knew that the circuit court was not bound by the plea agreement. Rather, we concluded that the defendant "was not affected by the" "insubstantial defect[]" "in his plea colloquy; in fact, he received the benefit of the plea agreement."[9] *Id.* (alteration in original; citation omitted).

¶29 Finally, *Mohr* concerned the *Bangert* line of cases as applied to presumptive minimum sentences. In *Mohr*, the defendant pled no contest to one charge that carried a presumptive two-year minimum sentence due to a repeater enhancer. *Mohr*, 201 Wis. 2d at 696-97. Defense counsel "discussed the minimum sentence issue with" the defendant before the plea hearing, but the presumptive minimum was not included in the plea questionnaire. *Id.* at 698, 702. At the plea hearing, the circuit court referenced the presumptive minimum, asking the State if "[t]here is a presumptive minimum of two years." *Id.* at 698. After the State confirmed that the presumptive minimum applied, the court asked the

---

[9] The *Johnson* court further concluded that our state supreme court's precedent "implicitly allows" for the application of the harmless error rule when assessing a *Bangert* claim, and it concluded that the plea defect was harmless. *State v. Johnson*, 2012 WI App 21, ¶14, 339 Wis. 2d 421, 811 N.W.2d 441 (citing *State v. Cross*, 2010 WI 70, ¶36, 326 Wis. 2d 492, 786 N.W.2d 64). However, in response to this analysis, the *Taylor* court emphasized that the harmless error doctrine is a distinct legal analysis that the *Cross* court did not apply. *Taylor*, 347 Wis. 2d 30, ¶41 n.11. The *Taylor* court further stated that it was not undertaking a harmless error analysis; "[r]ather, the focus is on whether the defendant's plea was entered knowingly, intelligently, and voluntarily, and whether the defendant is otherwise able to prove that failure to withdraw the plea would result in a manifest injustice." *Id.*

Citing *State v. Reyes Fuerte*, 2017 WI 104, ¶¶4, 21, 378 Wis. 2d 504, 904 N.W.2d 773, the State suggests on appeal that the harmless error rule may apply to *all* defects in a plea colloquy, but it concedes that our state supreme court has "not yet clarified" this issue. While the State argues that it "preserves its right to argue that harmless error analysis should apply to all plea colloquy errors, and that any such error was harmless here," it does not develop a harmless error analysis before this court, and we do not address that issue further.

defendant if she understood that the repeater enhancer increased the range of imprisonment from 1 to 15 years to 2 to 30 years. *Id.* The defendant stated that she understood, the court accepted her no-contest plea, and it sentenced her to the presumptive two-year minimum. *Id.* at 697-98. After sentencing, the defendant moved to withdraw her plea, and the court held a ***Bangert*** hearing. ***Mohr***, 201 Wis. 2d at 697. After considering the hearing testimony, the court denied her motion. *Id.*

¶30 This court concluded, contrary to the State's assertions on appeal, that where a charge carries a presumptive minimum, circuit courts "must assess" at a plea hearing "the defendant's awareness of the presumptive minimum sentence," including the fact that the "law presumes [the defendant] will be sentenced" to the presumptive minimum unless he or she "convinces the court that the best interests of the community would be served and the public would not be harmed by" a deviation from the presumptive minimum. *Id.* at 699-701. Because "[n]either the plea colloquy nor the plea hearing form referred to by the trial court during the plea contained this information," we concluded that the defendant "made a prima facie showing of an error during the plea hearing" and was entitled to an evidentiary hearing. *Id.* at 696, 701.

¶31 Nevertheless, this court upheld the defendant's plea and conviction because the record, including the transcript from the ***Bangert*** hearing, revealed that the defendant "knew about the presumptive minimum sentence despite the flaws in the colloquy." ***Mohr***, 201 Wis. 2d at 698, 702. We cited defense counsel's testimony that she discussed the presumptive minimum with the defendant prior to the plea hearing by explaining the meaning of the presumptive minimum and stating that "probation was still a possibility although it was something that probably would not occur." *Id.* at 702. We also noted that the

defendant admitted at the ***Bangert*** hearing that she had "heard" the circuit court and the State discuss the presumptive minimum sentence prior to entering her no-contest plea. ***Mohr***, 201 Wis. 2d at 702.

¶32    Based on the above authorities, we agree with the State that a circuit court's failure to provide accurate information about a presumptive minimum sentence during a plea colloquy is not always a per se ***Bangert*** violation requiring an evidentiary hearing.    As stated by the ***Finley*** court, ***Cross*** and ***Taylor*** demonstrate that no evidentiary hearing is required where the defendant knew the "potential punishment" and was given the sentence the circuit court described. ***Finley***, 370 Wis. 2d 402, ¶¶81, 84.    Moreover, ***Johnson*** dictates that an evidentiary hearing is not required where the defendant "was not affected by" an "insubstantial defect[]" in the plea colloquy.    ***Johnson***, 339 Wis. 2d 421, ¶12 (alteration in original; citation omitted).    ***Johnson*** remains good law.

¶33    We further agree with the State that a postconviction court or appellate court "can look to the record outside of the plea hearing to determine whether a defect was insubstantial or not."    This was the approach taken by the ***Cross*** and ***Taylor*** courts to determine that the defendants in those cases knew the potential punishments they could receive, despite the plea colloquy defects.

¶34    As applied to this case, the circuit court's failure to inform Wallace of the presumptive five-year minimum term of initial confinement on Count 1 at the plea hearing amounts to an insubstantial defect, not a manifest injustice. Moreover, Wallace "was not affected by" the insubstantial defect as he received the benefit of the plea agreement, making this case more like ***Cross***, ***Taylor***, and ***Johnson*** and less like ***Mohr***. *See Johnson*, 339 Wis. 2d 421, ¶12.  Although there is no record of the parties agreeing to a joint sentencing recommendation prior to

sentencing, the record overwhelmingly demonstrates that the defense did not believe there was a realistic possibility that Wallace would receive less than five years of initial confinement on Count 1. And while Wallace informed the PSI author that he desired a total of eight years' initial confinement, both parties ultimately recommended that the circuit court sentence Wallace to ten years of initial confinement on Count 1, *which is double the presumptive minimum*. In addition, as the State argues, "[n]either the parties nor the court mentioned the five-year presumptive minimum at sentencing, nor is there any indication that it had any relevance to the court's sentencing decision."

¶35 Therefore, the facts of this case are distinguishable from those in *Mohr*, where the defendant was entitled to an evidentiary hearing on her plea withdrawal claim. In addition to the circuit court in *Mohr* not informing the defendant of the presumptive minimum, the court sentenced the defendant to the presumptive minimum when the record established that the defendant expected to receive probation. *Mohr*, 201 Wis. 2d at 696-97. As explained, Wallace did not expect to receive less than the presumptive minimum; in fact, he expected and asked for more than the presumptive minimum. Like the defendant in *Johnson*, Wallace received the benefit of the plea agreement, as the court ultimately adopted the State's recommendation that it dismiss and read in the remaining five counts (and all repeater enhancers), and the court adopted the parties' sentencing recommendation as to the period of initial confinement on Count 1. Therefore, any defect in the court's colloquy was insubstantial and Wallace was not affected by the defect.

¶36 Furthermore, "the record makes clear that" Wallace knew of the five-year presumptive minimum when he entered his plea to Count 1. *See Taylor*, 347 Wis. 2d 30, ¶8. Although the presumptive minimum was not identified in

Wallace's plea questionnaire (unlike in *Taylor*), it was listed on the first pages of the criminal complaint, the information, and the amended information. Defense counsel explained at Wallace's initial appearance that he had reviewed the complaint with Wallace and that he believed Wallace understood its contents. Moreover, the amended information was referenced several times at the plea hearing. Most notably, defense counsel informed the circuit court that Wallace would be "entering a plea of no contest to Count One in the Amended Information," and the court referenced that document when asking Wallace if defense counsel was correct. *See id.*, ¶¶35-37.

¶37 To conclude that Wallace was not aware of the presumptive minimum sentence, we would have to assume that Wallace "misrepresented to the court that he had received, read, and understood the complaint." *See id.*, ¶39. Accordingly, we agree with the State that, "[t]aken together with his sentencing recommendation, the record indicates that Wallace understood the parameters of what he was facing, which realistically did not include anything under the presumptive minimum. His plea was therefore knowing, intelligent, and voluntary."

**CONCLUSION**

¶38 The circuit court correctly determined that Wallace was not entitled to a *Bangert* hearing on his plea withdrawal claim. While a defendant is entitled to be informed by the court of a presumptive minimum sentence at a plea hearing, under the facts of this case, and applying binding precedent, we conclude that the court's failure to inform Wallace of the presumptive minimum sentence at the plea hearing, while not recommended, did not amount to a "serious flaw in the fundamental integrity of the plea." *See Johnson*, 339 Wis. 2d 421, ¶12

(citation omitted). The record makes clear that Wallace did not expect to receive—or ask for—a sentence below the presumptive minimum, that Wallace knew of the presumptive minimum, that the parties jointly recommended a period of initial confinement on Count 1 that was double the presumptive minimum, that the court adopted and imposed that sentence, and that the presumptive minimum played no role in the court's sentencing decision. Therefore, Wallace has failed to demonstrate that he should be permitted to withdraw his plea to correct a manifest injustice.

*By the Court.*—Judgment and order affirmed.

Recommended for publication in the official reports.